UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

NAILYA ARIEFGYZY
FATALIYEVA,

              Petitioner,

              v.

ERNEST SANTACRUZ, et al.,

              Respondents.

) Case No. 5:26-cv-00506-DTB
)
)
) **ORDER GRANTING PETITION**
) **FOR WRIT OF HABEAS CORPUS**
)
)
)
)
)
)
)

**I.**

**PROCEEDINGS**

On February 4, 2026, petitioner Nailya Ariefgyzy Fataliyeva ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), accompanied by five supporting exhibits. (Docket No. 1). On March 2, 2026 (pursuant to the Court's February 6, 2026 Order Requiring Response to Habeas Petition, see Docket No. 4), Respondents filed an Answer to the Petition ("Answer"), accompanied by the Declaration of Lourdes Palacios ("Palacios Decl."). (Docket No. 7). On March 6, 2026, Petitioner filed a Reply. (Docket No. 8).

///

1

The Petition alleges that Petitioner is a refugee from the former U.S.S.R., and that she originally entered the United States with her parents when she was 17. (Petition at 2).[1]  On or about June 1, 2009, she was ordered removed to Azerbaijan.. (Id.).   After being held in custody for "a few months," she was released on supervision.  (Id.).  In 2021, after suffering a state criminal conviction, she was re-detained by immigration authorities.  (Id.).   Again, after a "few months" in immigration custody, she was released on supervision.  (Id.).  Since then, she has complied with all of her conditions and has suffered no additional criminal convictions.  (Id.).   On January 16, 2026, Petitioner attended an in-person appointment with the U.S. Department of Homeland Security ("DHS"), as instructed, and was arrested and detained without any notice or explanation.  (Id.).

Respondents concede that, as of March 2, 2026, Petitioner's cumulative post-removal detention exceeds six months in duration.  (Answer at 1).

Petitioner contends that the revocation of her release on supervision and her subsequent detention violated her right to both procedural and substantive due process under the Fifth Amendment to the Constitution, and that she is also subjected to indefinite detention pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001), because Azerbaijan does not recognize her as a citizen, will not issue her a travel document, and therefore it is not significantly likely that she will be removed in the reasonably foreseeable future.  ( Petition at 10-13).

Thus, this matter is now ready for decision.  For the reasons set forth below, the Court grants Petitioner's request for habeas relief.

/ / /

/ / /

/ / /

---

[1]    For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

2

## II.

## BACKGROUND

Petitioner was born in the former Soviet Union in the former Azerbaijan Soviet Socialist Republic ("A.S.S.R."). (Petition at 2). On August 30, 1994, Petitioner entered the United States as a refugee with her parents when she was approximately 17 years old. (Id.; Answer at 1).

On October 19, 1995, Petitioner adjusted status to that of a Lawful Permanent Resident as of August 30, 1994. (Palacios Decl. at ¶ 6). On January 5, 2007, Petitioner suffered a conviction for the crime of Criminal Threats, in violation of California Penal Code ("Cal. Pen. Code") § 422, and for Attempt to Burn, in violation of Cal. Pen. Code § 455, and Petitioner was sentenced to two years in prison. (Id. at ¶ 7). On July 23, 2007, Petitioner was issued a Notice to Appear ("NTA"), charging her as removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), on the basis of having been convicted of an aggravated felony. (Id. at ¶ 8). On May 9, 2008, an Immigration Judge denied Petitioner's applications for asylum, withholding of removal, and protection under Convention Against Torture ("CAT") and ordered Petitioner's removal from the United States to Azerbaijan. (Id. at ¶ 9). On June 5, 2008, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"); the BIA remanded the case back to the Immigration Judge. (Id. at ¶ 10).

On June 1, 2009, an Immigration Judge ordered Petitioner removed from the United States to Azerbaijan. (Id. at ¶ 11). The Immigration Judge denied Petitioner's applications for asylum, withholding of removal, and protection under CAT. (Id.). On November 3, 2009, Petitioner was served and released on an Order of Supervision ("OSUP"). (Id. at ¶ 12).

/ / /

/ / /

3

On September 24, 2013, Petitioner was convicted of Reckless Driving, in violation of California Vehicle Code ("Cal. Veh. Code") § 23103, and Petitioner was sentenced to 8 days in jail. (Id. at ¶ 13).

On June 30, 2014, Petitioner was convicted of Second Degree Burglary, in violation of Cal. Pen. Code § 459, and for Possession of a Controlled Substances, in violation of California Health and Safety Code ("Cal. H&S Code") § 11351, and Petitioner was sentenced to 2 days in jail. (Id. at ¶ 14).

On August 14, 2018, Petitioner was convicted of possession/purchase of a narcotic/controlled substance, in violation of Cal. H&S Code § 11351, and for possession of a controlled substance for sale, in violation of Cal. H&S Code § 11378, and Petitioner was sentenced to 364 days in jail. (Id. at ¶ 15).

On November 8, 2022, Petitioner was convicted of two separate charges of driving/taking a vehicle without the owner's consent, in violation of Cal. Veh. Code § 10851(a), and  Petitioner was sentenced to 16 months and 8 months in prison, respectively. (Id. at ¶ 16).

According to Petitioner (which Respondents do not contest), at an unspecified date in or after 2021, she was re-detained by immigration authorities, and was released on supervision after a "few months" in immigration custody. (Petition at 2).

On January 15, 2026, Petitioner was taken into custody by ICE/Enforcement and Removal Operations ("ERO") based on her final order of removal and criminal history since being placed on OSUP in 2009. (Id. at ¶ 17). ERO reviewed Petitioner's case and determined there are no pending appeals with any appellate court. (Id.). According to Respondents, Petitioner was given a Notice of Revocation of Supervision and afforded an interview to respond to the revocation of supervision. (Id.).

///

4

On January 27, 2026, ERO attempted to conduct a travel interview with Petitioner, but she refused to fill out or sign any applications for travel documents. (Id. at ¶ 18).

On February 3, 2026, ERO attempted to conduct a second travel interview with Petitioner, but she again refused to fill out or sign any applications for travel documents. (Id. at ¶ 19). ERO also requested travel documents by mailing a Travel Document Request to the Consulate General of Azerbaijan. The request remains pending. (Id.).

Petitioner contends that, despite being ordered removed to Azerbaijan in 2009, DHS has been unable to obtain travel documents for Petitioner from Azerbaijan. (Reply at 2). Petitioner further contends that individuals holding passports from the former U.S.S.R., such as herself, are ineligible to received travel documents because Azerbaijan ceased issuing passports to these individuals effective July 1, 2005. (Id. at 3). Attached to the Reply is a declaration from Petitioner's mother stating that she has contacted the Consulate of Azerbaijan in Los Angeles and has been advised that DHS has requested a travel document for Petitioner from the Consulate, but also has been advised that, following careful review of Petitioner's name and passport information, there is no document indicating that Petitioner is a citizen of Azerbaijan. (Id. at 2-3, Exhibit A).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in

custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws.  28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

## IV.

## PETITIONER'S CLAIMS

The Petition raises the following claims for habeas relief:  (1) Respondents revocation of Petitioner's supervised release without consideration of her individualized facts and circumstances violated the Administrative Procedure Act; (2) Petitioner's continued detention by Respondents is unlawful and contravenes 8 U.S.C. §1231(a)(6) as interpreted by the Supreme Court in Zadvydas, because the six-month presumptively reasonable period for continued removal efforts has long expired and Petitioner has not been removed and her removal to Azerbaijan is not reasonably foreseeable; (3) Petitioner's detention violates her right to substantive due process under the Fifth Amendment; and (4) Petitioner's detention violates her right to procedural due process under the Fifth Amendment.  (Petition at 10-13).

## V.

## DISCUSSION

The Court finds that habeas relief is warranted on Petitioner's claim that the revocation of her OSUP violated her right to procedural due process under the Fifth Amendment.

/ / /

6

**A.      Respondents Failed to Follow the Appropriate Procedures When They Revoked Petitioner's OSUP.**

Petitioner alleges that Respondents failed to follow the required procedures for revoking her OSUP – namely notice, an interview, and an opportunity to contest the basis for revocation.  (Petition at 2; Reply at 2).  Respondents dispute this contention, arguing that Petitioner received the requisite notice, interview and opportunity to contest the revocation.  (Answer at 7).

Pursuant to 8 C.F.R. § 241.13.(i)(1), the government may revoke an OSUP where a noncitizen has violated the conditions of release.  Alternatively, 8 C.F.R. § 241.13(i)(2) authorizes the government to revoke a noncitizen's order of supervision "if, on account of changed circumstances, the [s]ervice determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  Further, when the government revokes a noncitizen's order of supervision based on its determination that there is a significant likelihood that a noncitizen may be removed in the reasonably foreseeable future, the noncitizen must be:  (1) "[N]otified of the reasons for revocation of his or her release"; and (2) given "an initial informal interview promptly after his or her return to [ ] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."  Id.  Section 241.13(i)(3) therefore "require[s], at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond."  Vo v. Lyons, Case No. 1:25-cv-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026).

Thus, Section 241.13 first provides procedures for DHS to determine whether removal is reasonably foreseeable and, if not, to authorize the noncitizen's release

7

on an order of supervision.  See 8 C.F.R. § 241.13(d)-(g).  It then provides authority for DHS to revoke a noncitizen's order of supervision and re-detain them where they violated the terms of their release or where "changed circumstances" establish that their removal is now reasonably foreseeable.  Id.,§ 241.13(i)(1)-(3).

The provision authorizing revocation of an order of supervision based on "changed circumstances," Section 241.13(i)(2), only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the Zadvydas burden-shifting framework.  See 8 C.F.R. § 241.13(i)(2) (authorizing revocation of "release under this section"); id.,§ 241.13(i) (providing for conditions of release for noncitizens released upon a "determination" that their "removal is not significantly likely in the reasonably foreseeable future").  This means that noncitizens subject to revocation of their order of supervision have already met their burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Thus, pursuant to DHS regulations, when Petitioner was placed on an OSUP following her release from state custody in 2022, it required a determination by DHS that her removal was not significantly likely in the reasonably foreseeable future pursuant to 8 C.F.R. Section 241.13.

Here, there is a dispute as to whether Petitioner was provided notice and an interview when she was arrested and detained on January 16, 2026.  Petitioner claims that she was arrested and detained at her previously scheduled appointment with DHS on January 16, 2026 "without any explanation, notification or legitimate reason for this action." (Petition at 2).  On the other hand, Respondents assert that Petitioner was taken into custody by ICE/ERO on January 15, 2026, "based on her final order of removal and criminal history since being place on OSUP in 2009," and that "Petitioner was given [a] Notice of Revocation of Supervision and afforded an interview to respond to the revocation of supervision."  (Answer at 2-3; Palacios

Decl. at ¶¶ 16-17). Since neither Petitioner nor Respondents have provided the Court a copy of Petitioner's Notice of Revocation of Supervision, the Court, based on Respondents' statements in the Answer, evaluates the revocation of Petitioner's OSUP under both Sections 241.13(i)(1) and (2).

With respect to revocation under Section 241.13(i)(1), Respondents have adduced no evidence or otherwise shown that Petitioner violated any of the conditions of her supervision following her release from state custody in 2022, which is the OSUP that was revoked on January 16, 2026. Respondents' implication that Petitioner's OSUP was revoked "based on her criminal history since being placed on OSUP in 2009" is misplaced and cannot be a basis for revoking her OSUP in 2026, because there is no evidence that Petitioner engaged in any criminal conduct during her most recent OSUP commenced in 2022. Since there is no dispute that all of Petitioner's convictions occurred before she was placed on this most recent OSUP, those prior convictions cannot be a basis for revoking it on the basis that Petitioner violated a condition of supervision. Moreover, Petitioner asserts that she has complied with all of her conditions of supervision since 2021 (Petition at 2), and Respondents do not show or argue otherwise. Accordingly, the Court finds that Respondents have not shown a basis for revoking Petitioner's OSUP under Section 241.13(i)(1).

As noted, Section 241.13(i)(2) authorizes the government to revoke a noncitizen's OSUP "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." Again, since the parties did not provide the Court with the Notice of Revocation of Supervision, the Court has no information regarding what "changed circumstances" Respondents may have cited therein.

In the Answer, Respondents appear to cite as changed circumstances that "Azerbaijani nationals are being removed to Azerbaijan" and "DHS has effectuated

9

removals to Azerbaijan." (Answer at 3). Putting aside the fact that Respondents do not affirmatively assert that this was the basis provided to Petitioner in the Notice of Revocation of Supervision, such a generalized statement does not satisfy the requirement under Section 241.13(i)(2) that Petitioner be notified of the specific basis for the revocation of her OSUP and be given an informal interview and an opportunity to contest the basis. Respondents have adduced only vague, generalized reasons – one of which was factually inaccurate – for the revocation of Petitioner's supervision, which is insufficient for purposes of complying with the applicable regulations.

"[C]ourts in this district and across the country have held that such vague, boilerplate statements are insufficient notice." Gutnik v. Pamela Bondi et al., Case No. 5:26-cv-00908-WLH-ACCV, 2026 WL 700546, at *2 (C.D. Cal. Mar. 5, 2026) (collecting cases);see also Sarail A. v. Bondi, 803 F. Supp. 3d 775, 778, 787 (D. Minn. 2025) (finding notice that decision was made "based on a review of your file ... on account of changed circumstances in your case" because "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case" to be "not enough," because "Petitioner must be told what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully respond"); Yang v. Kaiser, Case No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) (finding "completely conclusory statement" that revocation was "based on a review of your file ... on account of changed circumstances in your case" "fail[ed] to reflect consideration of any of the required factors under 8 C.F.R. § 241.13(f)"); M.S.L. v. Bostock, Case No. 6:25-cv-01204-AA, 2025 WL 2430267, at *4, 10–11 (D. Or. Aug. 21, 2025) (finding notice that decision was "based on a review of your case; your existing order of removal; and a determination that there is a significant likelihood of your removal in the reasonably foreseeable future" "defective").

Petitioner also was not afforded any meaningful opportunity to be heard as to why she should not be detained. Petitioner alleges that she had attempted to apply for an Azerbaijani passport, but that her request was denied. (Petition at 3). Petitioner also asserts that individuals holding former U.S.S.R. passports – such as Petitioner – are ineligible to receive Azerbaijani passports, and that this policy has been in effect since 2005. (Id.). This information would have been important for purposes of Petitioner contesting the revocation of her supervision, and the failure of Respondents to comply with their own regulations "essentially bar[red] the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful." Kiwana v. LaRose, Case No. 3:25-cv-3678-JES-SBC, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026). The result is that Petitioner was "depriv[ed] of any 'meaningful opportunity' for a petitioner to be heard on the incredibly important issue of re-obtaining their freedom." Minassi v. Noem, Case No. 5:26-cv-00723-RGK-AYP, 2026 WL 923289, at *7 (C.D. Cal. Apr. 1, 2026).

Although Respondents fail to set forth the specifics of the basis for revocation in the Notice of Revocation, Respondents contend that even if the revocation of Petitioner's OSUP was not lawful, the appropriate remedy for any procedural deficiency would not be an automatic release from custody, but rather to tailor any remedy to the specific procedural deficiency. (Answer at 8-10, citing several cases in which courts have ordered ICE to provide notice and an interview for violations of Section 241.13(i)(3)). However, a "growing number of courts ... have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release." Nguyen v. Noem, Case No. 8:25-cv-02654-HDV-DSR, 2025 WL 3898489, at *7 (C.D. Cal. Dec. 19, 2025); Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("Numerous district courts, including courts in the Ninth Circuit, have determined that where ICE

fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.") (collecting cases).

The Court finds that release is an appropriate remedy for Respondents' regulatory violations. The purpose of the regulations—notice, an interview, and an opportunity to be heard—is to ensure that the government does not wrongly revoke a noncitizen's OSUP and deprive them of their liberty. Because Petitioner has been prejudiced by the denial of these protections, Petitioner should be returned to the "status quo," which is "is Petitioner's release on [her] OSUP before his current re-detention." Nazarian v. Noem, Case No. 5:25-cv-02694-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); Cruz v. Rios, et al., Case No. 5:26-cv-01374-MWF-DSR, 2026 WL 973367, at *4 (C.D. Cal. Apr. 8, 2026) (same); Bolandi v. Noem, No. 5:26-cv-00628-MCS-AGR, 2026 WL 485764, at *3 (C.D. Cal. Feb. 19, 2026); Hoang v. Noem, Case No. 5:25-cv-3177-JLS-RAO, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (same); see also Esmail v. Noem, Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030590, at *9 ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").[2]

## V.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered: (1) Granting the Petition and issuing a writ of habeas corpus requiring Respondents to immediately release Petitioner, subject to the conditions of her prior OSUP, and to return all property confiscated from her during her arrest and processing into detention; (2) ordering Respondents not to re-detain Petitioner unless they have obtained travel

---

[2]   The Court's determination that habeas relief is warranted on Petitioner's procedural due process claim renders it unnecessary for the Court to address Petitioner's other claims.

documents for her removal and provided her with adequate notice, an interview and an opportunity to be heard; and (3) requiring Respondents to file a status report within seven (7) days of the date of this Order confirming that Petitioner has been released from custody.

DATED: April 28, 2026

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE